**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY, individually and as successor-in-interest to Nationwide Mutual Fire Insurance Company, SCOTTSDALE INSURANCE COMPANY, and SCOTTSDALE INDEMNITY COMPANY, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. |
| THE NATIONAL BAPTIST CONVENTION, USA, INC., THE NATIONAL BAPTIST CONGRESS OF CHRISTIAN EDUCATION, a subsidiary of The National Baptist Convention USA, Inc., GEORGE WADDLES, and JANE DOE 248, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiffs, NATIONWIDE MUTUAL INSURANCE COMPANY, individually and as successor-in-interest to Nationwide Mutual Fire Insurance Company, SCOTTSDALE INSURANCE COMPANY, and SCOTTSDALE INDEMNITY COMPANY (collectively "Plaintiff-Insurers"), by its undersigned attorneys, brings this Complaint for Declaratory Judgment against Defendants, THE NATIONAL BAPTIST CONVENTION, USA, INC., THE NATIONAL BAPTIST CONGRESS OF CHRISTIAN EDUCATION, a subsidiary of The National Baptist Convention USA, Inc., GEORGE WADDLES, and JANE DOE 248, and alleges and states as follows:

**STATEMENT OF THE CASE**

1.      The Plaintiff-Insurers bring this insurance coverage action to obtain judicial declarations that they do not have the duty to defend or indemnify any of the Defendants in connection with a lawsuit encaptioned, *Jane Doe 248 v. Zion Hill Missionary Baptist Church-South Side,*

*d/b/a Zion Hill Missionary Baptist Church, et al.*, Cook County, Illinois, Case No. 2019-L-013342 ("Jane Doe Lawsuit").

## THE PARTIES

2.      Plaintiff, Nationwide Mutual Insurance Company ("Nationwide") is a corporation organized under the laws of Ohio with its principal place of business in Columbus, Ohio.

3.      Plaintiff, Scottsdale Insurance Company ("Scottsdale Insurance") is a corporation organized under the laws of Ohio with its principal place of business in Scottsdale, Arizona.

4.      Plaintiff, Scottsdale Indemnity Company ("Scottsdale Indemnity") is a corporation organized under the laws of Ohio with its principal place of business in Scottsdale, Arizona.

5.      Defendant, The National Baptist Convention, USA, Inc. ("NBC") is a Tennessee corporation with its principal place of business in Nashville, Tennessee.

6.       The National Baptist Congress of Christian Education ("NBCCE") is named as a defendant in the Jane Doe Lawsuit, but the NBCCE is actually an auxiliary, and the education arm of, the NBC.[1]  As the NBCCE is alleged to be a "subsidiary of" NBC in the Jane Doe Lawsuit, NBCCE is named as a Defendant herein.

7.      Defendant, George Waddles ("Rev. Waddles") is a citizen of Illinois.   From approximately 1983 to 2017, Rev. Waddles was the head Pastor at Zion Hill Missionary Baptist Church ("ZHMBC") in Cook County, Illinois.  From approximately September 2009 through September 2015, Rev. Waddles was the President of the NBCCE.

8.      Defendant, Jane Doe 248 ("Jane Doe"), is a citizen of Illinois.  She is named a potentially interested party by virtue of her status as the plaintiff in the Jane Doe Lawsuit.

---

[1] In the Jane Doe Lawsuit, NBCCE has not appeared as a defendant, and instead has adopted the pleadings filed by NBC as its own.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over all parties, pursuant to 28 U.S.C. § 1332(a), since the amount in controversy well exceeds $75,000, exclusive of interests and costs, as the Jane Doe Lawsuit seeks damages against NBC, NBCEE, and Rev. Waddles for battery, sexual abuse, and molestation, including damages for "great pain of mind and body, severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, humiliation, physical, personal and psychological injuries," plus the loss of normal daily activities, enjoyment of life, and income and/or earning capacity.  Jane Doe also seeks to recover her costs, disbursements, attorney's fees, and interest.  Plus, the cost to defend NBC, NBCEE, and Rev. Waddles against the Jane Doe Lawsuit, by itself, would well exceed $75,000.  In addition, the Plaintiff-Insurers, on the one hand, and the Defendants, on the other hand, are citizens of different states.

10.     Venue is appropriate under 28 U.S.C. § 1391(b)(1), as this action involves NBC's demand for defense and indemnification as respects the Jane Doe Lawsuit, which is pending in Cook County, Illinois.  As such, NBC this coverage dispute arises from events that occurred in this District.  Plus, Jane Doe is a resident of this District.

11.     An actual justiciable controversy exists between the Plaintiff-Insurers, on the one hand, and all Defendants, on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is vested with the power to declare the rights and liability of the parties hereto and to grant such relief as it deems necessary and proper.

## INSURANCE POLICIES

12.     The Plaintiff-Insurers issued to NBC certain policies of insurance in effect from 2013 to 2015.

Nationwide CGL Policies

13.     Nationwide issued to NBC a commercial general liability insurance policy, No. ACP GLO 5642976805, which was in effect from January 15, 2012 to January 15, 2013. This policy was then renewed for the January 15, 2013 to January 15, 2014 policy period, under No. ACP GLO 5652976805. That policy was then renewed for the January 15, 2014 to January 15, 2015 policy period, under No. ACP GLO 5662976805. These three policies will be referred to herein as the Nationwide CGL Policies. True and correct copies of the Nationwide CGL Policies are attached hereto and incorporated herein as **Group Exhibit A**, and include **Exhibits A-1**, **A-2**, and **A-3**.

14.     Each of the Nationwide CGL Policies includes coverage for "bodily injury," subject to the terms and provisions of the following Insuring Agreement:

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1.     Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" … to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" … to which this insurance does not apply. …

* * *

    **b.**    This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" … is caused by an "occurrence" that takes place in the "coverage territory"; …

* * *

15.     Each of the Nationwide CGL Policies defines "occurrence," in relevant part, as an "accident."

16. Each of the Nationwide CGL Policies contains an exclusion for Expected Or Intended Injury, which applies to "bodily injury" "expected or intended from the standpoint of the insured."

17. Each of the Nationwide CGL Policies includes as insureds employees of NBC, "but only for acts within the scope of their employment by [NBC] or while performing duties related to the conduct of [NBC's] business."

18. Each of the Nationwide CGL Policies is endorsed by the Limitation of Coverage to Designated Premises or Project Endorsement (CG 21 44 (07-98)), which provides that the Nationwide CGL Policies apply only to "'bodily injury' … arising out of … the ownership, maintenance or use of [1700 Baptist World Center Dr Nashville TN 37207] and operations necessary or incidental to those premises …."

19. Each of the Nationwide CGL Policies is endorsed by the Abuse or Molestation Exclusion Endorsement (CG 21 46 (07-98)), which provides:

> This insurance does not apply to "bodily injury" … arising out of:
>
> 1.   The actual or threatened abuse or molestation by of a person for whom any insured is or ever was anyone of any person while in the care, custody legally responsible and whose conduct would be or control of any insured, or
>
> 2.   The negligent:
>
>> a.   Employment;
>> b.   Investigation;
>> c.   Supervision;
>> d.   Reporting to the proper authorities, or failure to so report; or
>> e.   Retention;
>
> of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1. above.

* * *

20. The Nationwide CGL Policies also contain notice provisions, which are a condition precedent to coverage under the policies, and generally provide as follows:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

\* \* \*

**2.    Duties In The Event Of Occurrence, Offense, Claim Or Suit**

\* \* \*

**b.**    If a claim is made or "suit" is brought against any insured, you must:

**(1)**    Immediately record the specifics of the claim or "suit" and the date received; and

**(2)**    Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.**    You and any other insured involved must:

**(1)**    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

\* \* \*

Nationwide Umbrella Policies

21.    Nationwide issued to NBC a commercial umbrella liability insurance policy, No. ACP CAF 5634532660, which was in effect from June 6, 2012 to June 6, 2013. This policy was then renewed for the June 6, 2013 to June 6, 2014 policy period, under No. ACP CAF 5644532660. That policy was then renewed for the June 6, 2014 to June 6, 2015 policy period, under No. ACP CAF 5654532660. These three policies will be referred to herein as the Nationwide Umbrella Policies. True and correct copies of the Nationwide Umbrella Policies are attached hereto and incorporated herein as **Group Exhibit B**, and include **Exhibits B-1**, **B-2**, and **B-3**.

22.    Each of the Nationwide Umbrella Policies includes coverage for "bodily injury," subject to the terms and provisions of the following Insuring Agreement:

**B.** **Coverage B – Umbrella Liability Insurance**

1. Under Coverage B, we will pay on behalf of the "insured" damages the "insured" becomes legally obligated to pay be reason of liability imposed by law because of "bodily injury", "property damage", or "personal and advertising injury" covered by this insurance which takes place during the Policy Period and is caused by an "occurrence." We will pay such damages in excess of the Retained Limit Aggregate specified in the Declarations or the amount payable by "other insurance," whichever is greater.

* * *

8. This insurance applies to "bodily injury" … only if:

   a. The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; …

* * *

23. Each of the Nationwide Umbrella Policies defines "occurrence," in relevant part, as an "accident."

24. Each of the Nationwide Umbrella Policies contains an exclusion for Expected Or Intended Injury, which applies to "bodily injury" "expected or intended from the standpoint of the insured."

25. Each of the Nationwide Umbrella Policies contains the following relevant exclusion:

   Under Coverage A and Coverage B, this insurance does not apply to:

* * *

4. Abuse or Molestation

   … ["B]odily injury" … arising out of:

   a. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

   b. The negligent:

**(1)**     Employment;
**(2)**     Investigation;
**(3)**     Supervision;
**(4)**     Reporting to the proper authorities, or failure to so report;   or
**(5)**     Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph a. above.

\* \* \*

26.     The Nationwide Umbrella Policies similarly require that NBC "see to it that we … receive notice of the claim or 'suit' as soon as possible."

<u>Scottsdale Insurance CGL Special Event Policies</u>

27.     Scottsdale Insurance issued to NBC three special event liability insurance policies:

- No. CPS1788318, effective August 29, 2013 to September 7, 2013, and which has a scheduled designated premises of Hilton Charlotte Center, 222 E 3rd St, Charlotte, NC 28202

- No. CPS1873626, effective January 15, 2014 to January 25, 2014, and which has a scheduled designated premises of 2200 Ninth Ave N, Birmingham, AL 35202

- No. CPS1959045, effective June 12, 2014 to June 21, 2014, and which has a scheduled designated premises of 650 South Griffin St, Dallas, TX 75202

These three policies will be referred to herein as the CGL Special Event Policies. True and correct copies of the CGL Special Event Policies are attached hereto and incorporated herein as **<u>Group Exhibit C</u>**, and include **<u>Exhibits C-1</u>**, **<u>C-2</u>**, and **<u>C-3</u>**.

28.     Each of the CGL Special Event Policies includes coverage for "bodily injury," subject to the terms and provisions of the following Insuring Agreement:

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.    **Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" … to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" … to which this insurance does not apply. …

* * *

    **b.**    This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" … is caused by an "occurrence" that takes place in the "coverage territory"; …

* * *

29.    Each of the CGL Special Event Policies defines "occurrence," in relevant part, as an "accident."

30.    Each of the CGL Special Event Policies contains an exclusion for Expected Or Intended Injury, which applies to "bodily injury" "expected or intended from the standpoint of the insured."

31.    Each of the CGL Special Event Policies includes as insureds employees of NBC, "but only for acts within the scope of their employment by [NBC] or while performing duties related to the conduct of [NBC's] business."

32.    Each of the CGL Special Event Policies is endorsed by the Limitation of Coverage to Designated Premises or Project Endorsement (CG 21 44 (07-98)), which provides that the CGL Special Event Policies apply only to "'bodily injury' … arising out of … the ownership, maintenance or use of the premises shown in the Schedule … and operations necessary or incidental to those premises…."

33. Each of the CGL Special Event Policies is also endorsed by the Assault and/or Battery Exclusion Endorsement (GLS-227s 4-13), which provides as follows:

This insurance does not apply to … "bodily injury" … arising from:

1. Assault and/or Battery committed by any insured, any employee/"employee" of any insured, or any other person;

2. The attempt or failure to suppress or prevent Assault and/or Battery by any person in **1.** above;

* * *

4. The negligent:

   a. Employment;
   b. Investigation;
   c. Supervision;
   d. Reporting to the proper authorities, or failure to so report; or
   e. Retention

   of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraphs **1., 2.** or **3.** above.

* * *

34. Each of the CGL Special Event Policies contains notice provisions, which are a condition precedent to coverage under the policies, and generally provide as follows:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

* * *

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

* * *

b. If a claim is made or "suit" is brought against any insured, you must:

   (1) Immediately record the specifics of the claim or "suit" and the date received; and

   (2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other insured involved must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

\* \* \*

Scottsdale Indemnity Claims-Made Policy

35. Scottsdale Indemnity issued to NBC as the **Parent Organization** a Business and Management Indemnity Policy – Non-Profit Organizations, Policy No. EKI3125150, effective March 21, 2014 to March 21, 2015 ("Claims-Made Policy"). A true and correct copy of the Claims-Made Policy is attached hereto and incorporated herein as **Exhibit D**.

36. The Declarations of the Claims-Made Policy provide, in pertinent part, that:

**THE ... INSURED PERSON AND ORGANIZATION ... COVERAGE SECTION[ ] OF THIS POLICY ... COVER[S] ONLY CLAIMS FIRST MADE AGAINST, AND REPORTED BY THE INSURED PURSUANT TO THE TERMS OF THE RELEVANT COVERAGE SECTION. PLEASE READ THIS POLICY CAREFULLY.**

37. The Claims-Made Policy includes General Terms and Conditions (EKI-326 (04/08)) that apply to all Coverage Sections and, in relevant part, at Section B. **DEFINITIONS**, provides:

7. **Organization** means:

a. the **Parent Organization;** and
b. any **Subsidiary,**

\* \* \*

10. **Policy Period** means the period from the effective date and hour of the inception of this **Policy** to the **Policy** expiration date and hour as set forth in Item 2. of the Declarations, or its earlier cancellation date and hour, if any.

\* \* \*

12. **Subsidiary** means any entity of which more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for the election of such entity's directors or managers are owned or controlled by the **Parent Organization,** directly or indirectly, if such entity:

   a. was so owned on or prior to the inception date of this **Policy;** or
   b. becomes so owned after the inception date of this **Policy.**

\* \* \*

38. The Claims-Made Policy includes, in relevant part, an Insured Person and Organization Coverage Section (EKI-P-8 (04/08)) which, subject to the General Terms and Conditions, contains the following Insuring Clause:

A. **INSURING CLAUSE**

   **Insurer** shall pay the **Loss** of the **Insureds** which the **Insureds** have become legally obligated to pay by reason of a **Claim** first made against the **Insureds** during the **Policy Period** … and reported to the **Insurer** pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period.**

\* \* \*

39. As modified by the Tolling or Waiving the Statute of Limitations Endorsement (EKI-802 (01/09)), the Insured Person and Organization Coverage of the Claims-Made Policy includes, at Section B. **DEFINITIONS**, the following definition of **Claim**:

1. **Claim** means:

   a. a written demand against any **Insured** for monetary damages or non-monetary or injunctive relief;

   b. a civil proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading;

   c. a criminal proceeding against any **Insured,** commenced by a return of an indictment or similar document, or receipt or filing of a notice of charges;

      d.     an arbitration proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief; or

      e.     a civil, administrative or regulatory proceeding or a formal governmental investigation against any **Insured** commenced by the filing of a notice of charges, investigative order or similar document.

      f.     a written request received by the **Insureds** to toll or waive the statute of limitations regarding a potential **Claim**. Such **Claim** shall be commenced by the receipt of such request.

*　*　*

40.    As amended by the Amend Notice Provision – Insured Person and Organization Endorsement (EKI-267 (04/08)), the Insured Person and Organization Coverage of the Claims-Made Policy provides, at Section E. **NOTIFICATION**, that:

    1.     The **Insureds** shall, as a condition precedent to their rights to payment under this Coverage Section only, give **Insurer** written notice of any **Claim** as soon as practicable, but in no event later than sixty (60) days after the end of the **Policy Period.** If any **Claim** is first made against the **Insureds** during the **Extended Period,** if purchased, written notice to **Insurer** must be given as soon as practicable, but in no event later than sixty (60) days after the end of the **Extended Period.**

    2.     If, during the **Policy Period** or the **Discovery Period,** if purchased, any of the **Insureds** first becomes aware of a specific **Wrongful Act** which may reasonably give rise to a future **Claim** covered under this **Policy,** and if the **Insureds,** during the **Policy Period** or the **Discovery Period,** if purchased, give written notice to **Insurer** as soon as practicable of:

      a.     a description of the **Wrongful Act** allegations anticipated;
      b.     the identity of the potential claimants;
      c.     the circumstances by which the **Insureds** first became aware of the **Wrongful Act;**
      d.     the identity of the **Insureds** allegedly involved;
      e.     the consequences which have resulted or may result; and
      f.     the nature of the potential monetary damages and non-monetary relief;

    then any **Claim** made subsequently arising out of such **Wrongful Act** shall be deemed for the purposes of this Coverage Section to have been made at the time such notice was received by the **Insurer.** No

coverage is provided for fees, expenses and other costs incurred prior to the time such **Wrongful Act** results in a **Claim.**

3.    Notice to **Insurer** shall be given to the address shown under Item 8. of the Declarations for this **Policy.**

4.    A **Claim** shall be deemed to have been first made against the **Insureds** on the date an **Insured** who is an executive officer, director, trustee, business officer, Superintendent or general counsel (or equivalent position) of any **Organization** becomes aware of such **Claim.**

\* \* \*

41.    The Claims-Made Policy excludes any **Claim** "for actual or alleged bodily injury … assault, battery, mental anguish, [or] emotional distress…."

42.    The Claims-Made Policy also contains a Sexual Misconduct, Child Abuse, Neglect Exclusion (EKI-110 (04/08)), which precludes coverage for "**Loss**" on account of any **Claim** "alleging, based upon, arising out of, or attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any **Sexual Misconduct**, child abuse, or neglect, including but not limited to employment, supervision, reporting to authorities, failure to so report or retention of any person."  "**Sexual Misconduct**" is then defined to mean "any licentious, immoral or sexual behavior, sexual abuse, sexual assault, or molestation intended to lead to or culminating in any attempted or actual sexual act."

## THE JANE DOE LAWSUIT

43.    The operative pleading in the Jane Doe Lawsuit is the Second Amended Complaint at Law ("Jane Doe Complaint").  A true and correct copy of the Jane Doe Complaint is attached hereto and incorporated herein as **Exhibit E**.

44.    The Jane Doe Complaint alleges that NBC's "mission is to fulfill the Great Commission of Jesus Christ through preaching, teaching, and healing"; that NBC does so through its eleven subsidiaries, including NBCCE; and that, at all relevant times, Rev. Waddles, as head pastor of ZHMBC, was a member of the NBC and/or the NBCCE.  *See* **Ex. E**, ¶¶ 4, 6-8.

45.     The Jane Doe Complaint alleges that, from September 2009 through September 2015, Rev. Waddles was the President of the NBCCE, he was appointed to by the President of the NBC on an annual basis, and during which time the NBCCE operated its business from Rev. Waddles' office at ZHMBC. *See* **Ex. E**, ¶¶ 10-12.

46.     The Jane Doe Complaint alleges that, from September 2009 through September 2015, and during the time Jane Doe was a minor parishioner at ZHMBC, Rev. Waddles was an employee and/or agent under the supervision of the NBC, and that NBC and NBCEE "placed Rev. Waddles in positions where he had access to and worked with children as an integral part of his work, including his provision of counseling for minor females." *See* **Ex. E**, ¶¶ 14-17.

47.     The Jane Doe Complaint alleges that, from September 2009 through 2014, Rev. Waddles was represented as "the highest authority figure" of NBCCE, and Jane Doe participated in conventions held and/or sponsored by NBC and NBCCE.  *See* **Ex. E**, ¶¶ 18-20.

48.     It is alleged that, during and through these activities, Jane Doe was a minor and vulnerable child and was dependent on NBC and NBCEE, who had custody of and accepted the entrustment of Jane Doe.  It is further alleged that NBC and NBCEE supervised employees and agents, including Rev. Waddles, and assumed responsibility for the well-being of minors, including Jane Doe.  *See* **Ex. E**, ¶¶ 21-23.

49.     It is alleged that, in 2013, when Jane Doe was approximately fourteen years old, she began counseling services with Rev. Waddles, which primarily occurred alone and behind closed doors with Rev. Waddles in Rev. Waddles' office. *See* **Ex. E**, ¶¶ 24-27.

50.     It is alleged that, from June 17-21, 2013, the NBC and NBCCE held its 108th Annual Conference in St. Louis, Missouri, which Jane Doe attended, and that, during the alleged Conference, Rev. Waddles continued to counsel Jane Doe. *See* **Ex. E**, ¶¶ 28-33.

51.     The Jane Doe Complaint alleges that, during Jane Doe's counseling sessions with Rev. Waddles, Rev. Waddles "began to sexually abuse" Jane Doe, that the sexual abuse took place at Rev. Waddles' office at ZHMBC and the 2013 Annual Conference, and that the abuse continued until June 2014 "when [Jane Doe] confided in her mother about the abuse" and confronted Rev. Waddles, to which Rev. Waddles "confessed and urged [Jane Doe] not to go to authorities." *See* **Ex. E**, ¶¶ 36-38.

52.     As a result of Rev. Waddles' alleged sexual abuse of Jane Doe, Rev. Waddles was charged with aggravated criminal sexual abuse, and in October 2017, he pleaded guilty to aggravated criminal sexual abuse.  *See* **Ex. E**, ¶¶ 39-43.

53.     The Jane Doe Complaint alleges that NBC and NBCEE should have known that "Rev. Waddles had a propensity of sexually abusing minors" based on similar accusations and criminal charges against Rev. Waddles, and that due diligence in investigating Rev. Waddles prior to and/or during his time as an employee and/or agent of the Baptist Church Defendants "would have reflected Rev. Waddles' history of having abused young girls."  It is further alleged that NBC and the NBCCE "had actual or constructive knowledge that Rev. Waddles was a danger to children and had the propensity to molest young girls before Rev. Waddles sexually molested [Jane Doe]."  *See* **Ex. E**, ¶¶ 44-59.

54.     Count I against Rev. Waddles (for "Battery/Sexual Abuse") alleges that "as a direct and proximate result of" the sexual abuse Jane Doe suffered "from approximately 2013 through 2014," Jane Doe has sustained and will continue to sustain "physical and psychological injuries and damages."  Jane Doe monetary damages, plus costs, disbursements, reasonable attorney's fees, and interest.

55.     Count II (for "Negligence – Restatement of Torts (Second) § 323") alleges that NBC and the NBCEE, among others, agreed and undertook to provide for the supervision, care and physical safety of children, including Jane Doe, at and upon the premises of ZHMBC; that they knew

or should have known of Rev. Waddles' dangerous propensities as a "child molester"; but they failed to exercise reasonable care to protect Jane Doe from Rev. Waddles, by, in part, "actively maintaining and employing Rev. Waddles in a position of power, authority, and control through which Rev. Waddles had access to children, including [Jane Doe], when [they] knew or should have known of Rev. Waddles' dangerous and exploitative propensities as a child molester." It is further alleged that NBC and the NBCEE failed to "have sufficient policies and procedures to prevent child sex abuse; properly implement the[ir] policies and procedures to prevent child sex abuse; take reasonable measures to make sure that the policies and procedures to prevent child sex abuse were working; adequately inform families and children of the risks of child sex abuse; investigate risks of child molestation; properly train the workers at [ZHMBC] regarding identifying and reporting child sexual abuse; have any outside agency test their safety procedures; protect children in their programs from sexual abuse; adhere to the applicable standard of care for child safety; investigate the amount and type of information necessary to represent the institutions, programs, leaders and people as safe; and train their employees properly to identify signs of child molestation by fellow employees." In total, the alleged abuse of Jane Doe has resulted in her suffering "great pain of mind and body, severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, humiliation, physical, personal and psychological injuries," plus the loss of normal daily activities, enjoyment of life, and income and/or earning capacity. Count II demands judgment against NBC and the NBCEE, plus costs, disbursements, reasonable attorney's fees, and interest.

56. Count III (for "Negligence – Restatement of Torts (Second) § 314A(4)") alleges that NBC and the NBCEE had an affirmative duty to protect Jane Doe from the sexual abuse of Rev. Waddles, but breached that duty in multiple ways similar to the alleged acts and omissions alleged in Count II, and generally failed to protect Jane Doe. Count III alleges identical damages suffered by Jane Doe and demands identical relief as in Count II.

57.     Count IV (for "Negligence Regarding Actions Outside the Scope of Employment - Restatement of Torts (Second) § 317") alleges that NBC and the NBCCE had a duty to exercise reasonable care for the protection and benefit of minor children, including Jane Doe, and that, alternatively, the alleged sexual abuse by Rev. Waddles was "outside the scope of his employment … but were such acts for which [NBC and the NBCCE] have legal responsibility" because, among other things, Rev. Waddles sexually abused Jane Doe on the premises of NBC and the NBCEE.  Count IV alleges identical damages suffered by Jane Doe and demands identical relief as in Counts II and III.

58.     Count V (for "Fraudulent Misrepresentation or Non-Disclosure of Facts – Restatement of Torts (Second) § 557A and § 310") alleges that NBC and the NBCEE had a duty to refrain from making fraudulent misrepresentations to Jane Doe and her family concerning Rev. Waddles' fitness to counsel minor parishioners, but that they instead "represented Rev. Waddles as a pastor who should be revered as a symbol of love, safety, and trust at" ZHMBC.  It is further alleged that they knew Rev. Waddles had a history of having sexually abused minors, but never disclosed that knowledge, which caused similar damages to Jane Doe as alleged in Counts II, III, and IV.  Count V seeks identical relief as the prior counts.

### TENDER ON BEHALF OF ALL BAPTIST CHURCH DEFENDANTS

59.     NBC has sought defense and indemnification from the Plaintiff-Insurers under the above-referenced insurance policies in connection with the Jane Doe Lawsuit.

60.     On August 14, 2023, the Plaintiff-Insurers denied that any coverage is available under the above-referenced insurance policies in connection with the Jane Doe Lawsuit.

### COUNT I – NO COVERAGE UNDER THE NATIONWIDE CGL POLICIES

61.     Nationwide incorporates by reference paragraphs 1-60 above as if fully stated herein.

62. NBCEE is not an insured under the Nationwide CGL Policies. It is not a named insured, and it is not referenced expressly or impliedly as an insured anywhere in the Nationwide CGL Policies.

63. As respects Rev. Waddles, the injuries allegedly sustained by Jane Doe as a result of the sexual abuse and molestation he is alleged to have committed cannot have been an "occurrence," *i.e.*, an accident. Further, he must have intended or expected the results of his alleged abuse or molestation of Jane Doe, which, in turn, precludes any coverage being available to him under the Nationwide CGL policies.

64. In addition, Rev. Waddles, when he allegedly abused or molested Jane Doe, could not have been acting "within the scope of their employment by [NBC] or while performing duties related to the conduct of [NBC's] business" because abusing and molesting children is not within the scope of his alleged employment by NBC and is not related to the conduct of NBC's business.

65. While Coverage A of the Nationwide CGL Policies provides coverage for "bodily injury" caused by an "occurrence," as those terms are defined in the Nationwide CGL Policies, each of the Nationwide CGL Policies excludes coverage for "bodily injury" arising out of abuse or molestation by anyone of any person while in the care, custody or control of any insured. The exclusion also encompasses the negligent employment, investigation, supervision, reporting to the police (or the failure to report), and retention of a person for whom NBC was legally responsible. As the Jane Doe Lawsuit seeks damages for abuse or molestation of Jane Doe by Rev. Waddles, while Jane Doe was in NBC's custody, and the entirety of the remaining allegations concerning acts and/or omissions all culminate in Jane Doe being abused or molested by Rev. Waddles, no coverage is available under the Nationwide CGL Policies.

66. While Coverage A of the Nationwide CGL Policies provides coverage for "bodily injury" caused by an "occurrence," as those terms are defined in the Nationwide CGL Policies, each

of the Nationwide CGL Policies limits the available coverage to "'bodily injury' … arising out of … the ownership, maintenance or use of [1700 Baptist World Center Dr Nashville TN 37207] and operations necessary or incidental to those premises." The Jane Doe Lawsuit's allegations involve injuries occurring in Illinois and Missouri, far away from the scheduled premises at 1700 Baptist World Center Dr Nashville TN 37207. Therefore, no coverage is available under the Nationwide CGL Policies because Jane Doe's alleged injuries do not arise out of events taking place at any of the scheduled premises and, moreover, do not arise out of operations necessary or incidental to the scheduled premises.

67.     The Nationwide CGL Policies require, as a condition precedent to coverage, that notice of the Jane Doe Lawsuit be provided "as soon as practicable." NBC was first aware of the Jane Doe Lawsuit no later than December 17, 2021, when its counsel filed an appearance in the suit. However, NBC did not provide notice of the Jane Doe Lawsuit to Nationwide until June 26, 2023, after a substantial amount of discovery was completed, settlement negotiations had occurred, and significant discovery deadlines had passed. Thus, Nationwide was greatly prejudiced by NBC's failure to provide timely notice of the Jane Doe Lawsuit, and in turn, NBC's breach of the policies' notice condition constitutes a material breach, which terminates any duty or obligation Nationwide may arguably have to NBC in connection with the Jane Doe Lawsuit.

## COUNT II – NO COVERAGE UNDER THE NATIONWIDE UMBRELLA POLICIES

68.     Nationwide incorporates by reference paragraphs 1-60 above as if fully stated herein.

69.     NBCEE is not an insured under the Nationwide Umbrella Policies. It is not a named insured, and it is not referenced expressly or impliedly as an insured anywhere in the Nationwide Umbrella Policies.

70. Rev. Waddles is not an insured under the Nationwide Umbrella Policies. He is not a named insured and is otherwise not referenced expressly or impliedly as an insured anywhere in the Nationwide Umbrella Policies.

71. Also as respects Rev. Waddles, the injuries allegedly sustained by Jane Doe as a result of the sexual abuse and molestation he is alleged to have committed cannot have been an "occurrence," *i.e.*, an accident. Further, he must have intended or expected the results of his alleged abuse or molestation of Jane Doe, which, in turn, precludes any coverage being available to him under the Nationwide CGL policies.

72. In addition, Rev. Waddles, when he allegedly abused or molested Jane Doe, could not have been acting "within the scope of their employment by [NBC] or while performing duties related to the conduct of [NBC's] business" because abusing and molesting children is not within the scope of his alleged employment by NBC and is not related to the conduct of NBC's business.

73. While Coverage B of the Nationwide Umbrella Policies provides coverage for "bodily injury" caused by an "occurrence," as those terms are defined in the Nationwide Umbrella Policies, each of the Nationwide CGL Policies excludes coverage for "bodily injury" arising out of abuse or molestation by anyone of any person while in the care, custody or control of any insured. The exclusion also encompasses the negligent employment, investigation, supervision, reporting to the police (or the failure to report), and retention of a person for whom NBC was legally responsible. As the Jane Doe Lawsuit seeks damages for abuse or molestation of Jane Doe by Rev. Waddles, while Jane Doe was in NBC's custody, and the entirety of the remaining allegations concerning acts and/or omissions all culminate in Jane Doe being abused or molested by Rev. Waddles, no coverage is available under the Nationwide Umbrella Policies.

74. The Nationwide Umbrella Policies require, as a condition precedent to coverage, that notice of the Jane Doe Lawsuit be provided "as soon as possible." NBC was first aware of the Jane

Doe Lawsuit no later than December 17, 2021, when its counsel filed an appearance in the suit. However, NBC did not provide notice of the Jane Doe Lawsuit to Nationwide until June 26, 2023, after a substantial amount of discovery was completed, settlement negotiations had occurred, and significant discovery deadlines had passed. Thus, Nationwide was greatly prejudiced by NBC's failure to provide timely notice of the Jane Doe Lawsuit, and in turn, NBC's breach of the policies' notice condition constitutes a material breach, which terminates any duty or obligation Nationwide may arguably have to NBC in connection with the Jane Doe Lawsuit.

**COUNT III – NO COVERAGE UNDER**
**SCOTTSDALE INSURANCE CGL SPECIAL EVENT POLICIES**

75.     Scottsdale Insurance incorporates by reference paragraphs 1-60 above as if fully stated herein.

76.     NBCEE is not an insured under the CGL Special Event Policies. It is not a named insured, and it is not referenced expressly or impliedly as an insured anywhere in the CGL Special Event Policies.

77.     As respects Rev. Waddles, the injuries allegedly sustained by Jane Doe as a result of the sexual abuse and molestation he is alleged to have committed cannot have been an "occurrence," *i.e.*, an accident. Further, he must have intended or expected the results of his alleged abuse or molestation of Jane Doe, which, in turn, precludes any coverage being available to him under the CGL Special Event policies.

78.     In addition, Rev. Waddles, when he allegedly abused or molested Jane Doe, could not have been acting "within the scope of their employment by [NBC] or while performing duties related to the conduct of [NBC's] business" because abusing and molesting children is not within the scope of his alleged employment by NBC and is not related to the conduct of NBC's business.

79.     While Coverage A of the CGL Special Event Policies provides coverage for "bodily injury" caused by an "occurrence," as those terms are defined in the CGL Special Event Policies, each

of the CGL Special Event Policies limits the available coverage to "'bodily injury' … arising out of … the ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises." The Jane Doe Lawsuit's allegations involve injuries occurring in Illinois and Missouri, far away from the scheduled premises at "Hilton Charlotte Center, 222 E 3rd St, Charlotte, NC 28202," "2200 Ninth Ave N, Birmingham, AL 35202," and "650 South Griffin St, Dallas, TX 75202." Therefore, no coverage is available under the CGL Special Event Policies because Jane Doe's alleged injuries do not arise out of events taking place at any of the scheduled premises and, moreover, do not arise out of operations necessary or incidental to the scheduled premises.

80. While Coverage A of the CGL Special Event Policies provides coverage for "bodily injury" caused by an "occurrence," as those terms are defined in the CGL Special Event Policies, each of the CGL Special Event Policies excludes coverage for "bodily injury" arising from assault or battery committed by any employee of any insured or by any other person; NBC's attempt or failure to suppress or prevent assault and/or battery; and NBC's negligent employment, investigation, supervision, reporting to the proper authorities (or failure to so report), or retention of the person who committed the assault and/or battery and for whom NBC is or ever was legally responsible. As the Jane Doe Lawsuit seeks damages for battery/sexual abuse, and the entirety of the remaining allegations concerning acts and/or omissions all culminate in her being battered or assaulted by Rev. Waddles, no coverage is available under the CGL Special Event Policies.

81. The CGL Special Event Policies require, as a condition precedent to coverage, that notice of the Jane Doe Lawsuit be provided "as soon as practicable." NBC was first aware of the Jane Doe Lawsuit no later than December 17, 2021, when its counsel filed an appearance in the suit. However, NBC did not provide notice of the Jane Doe Lawsuit to Scottsdale Insurance until June 26, 2023, after a substantial amount of discovery was completed, settlement negotiations had occurred, and significant discovery deadlines had passed. Thus, Scottsdale Insurance was greatly prejudiced by

NBC's failure to provide timely notice of the Jane Doe Lawsuit, and in turn, NBC's breach of the policies' notice condition constitutes a material breach, which terminates any duty or obligation Scottsdale Insurance may arguably have to NBC in connection with the Jane Doe Lawsuit.

**COUNT IV – NO COVERAGE UNDER**
**SCOTTSDALE INDEMNITY CLAIMS-MADE POLICY**

82. Scottsdale Indemnity incorporates by reference paragraphs 1-60 above as if fully stated herein.

83. The Claims-Made Policy provides that Scottsdale Indemnity shall pay the **Loss** of the **Insureds** which the **Insureds** have become legally obligated to pay by reason of a **Claim** first made against the **Insureds** during the **Policy Period**. The **Policy Period** of the Claims-Made Policy was March 21, 2014 to March 21, 2015. However, no qualifying **Claim**, as that term is defined, was made against any **Insured**, and further, no **Insured** reported a **Claim** to Scottsdale Indemnity within the time period required by the Claims-Made Policy. As such, no coverage is available for NBC, NBCEE, or Rev. Waddles under the Claims-Made Policy in connection with the Jane Doe Lawsuit.

84. The Claims-Made Policy excludes coverage for any **Claim** "for actual or alleged bodily injury … assault, battery, mental anguish, [or] emotional distress…." Since the Jane Doe Lawsuit consists exclusively of claims of physical injury, mental anguish, and emotional distress, no coverage is available for NBC, NBCEE, or Rev. Waddles under the Claims-Made Policy.

85. The Claims-Made Policy's Sexual Misconduct, Child Abuse, Neglect Exclusion precludes coverage for "**Loss**" on account of any **Claim** "alleging, based upon, arising out of, or attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any **Sexual Misconduct**, child abuse, or neglect, including but not limited to employment, supervision, reporting to authorities, failure to so report or retention of any person." "**Sexual Misconduct**" is then defined to mean "any licentious, immoral or sexual behavior, sexual abuse, sexual assault, or molestation intended to lead to or culminating in any attempted or actual sexual act." Since the entirety

of the Jane Doe Lawsuit is premised on the abuse of Jane Doe by Rev. Waddles, this Exclusion completely bars all coverage for NBC, NBCEE, or Rev. Waddles in connection with the Jane Doe Lawsuit.

<b>COUNT V – NO DUTY TO INDEMNIFY UNDER ANY POLICY</b>

86.     Plaintiff-Insurers incorporate by reference paragraphs 1-85 above as if fully stated herein.

87.     Given that the Plaintiff-Insurers do not have a duty to defend any of NBC, NBCEE, or Rev. Waddles under the Nationwide CGL Policies, the Nationwide Umbrella Policies, the CGL Special Event Policies, or the Claims-Made Policy, the Plaintiff-Insurers necessarily have no duty to indemnify any defendant against an adverse judgment or settlement in the Jane Doe Lawsuit.

WHEREFORE, Plaintiffs, NATIONWIDE MUTUAL INSURANCE COMPANY, individually and as successor-in-interest to Nationwide Mutual Fire Insurance Company, SCOTTSDALE INSURANCE COMPANY, and SCOTTSDALE INDEMNITY COMPANY respectfully request this Court to declare and adjudge the controversy as follows:

A.     Nationwide Mutual Insurance Company has no duty to defend NBC under the Nationwide CGL Policies in connection with the Jane Doe Lawsuit; and

B.     Nationwide Mutual Insurance Company has no duty to indemnify NBC under the Nationwide CGL Policies in connection with the Jane Doe Lawsuit; and

C.     Nationwide Mutual Insurance Company has no duty to defend NBC under the Nationwide Umbrella Policies in connection with the Jane Doe Lawsuit; and

D.     Nationwide Mutual Insurance Company has no duty to indemnify NBC under the Nationwide Umbrella Policies in connection with the Jane Doe Lawsuit; and

E.     Scottsdale Insurance Company has no duty to defend NBC under the CGL Special Event Policies in connection with the Jane Doe Lawsuit;

F.      Scottsdale Insurance Company has no duty to indemnify NBC under the CGL Special Event Policies in connection with the Jane Doe Lawsuit;

G.      Scottsdale Indemnity Company has no duty to defend NBC under the Claims-Made Policy in connection with the Jane Doe Lawsuit;

H.      Scottsdale Indemnity Company has no duty to indemnify NBCEE under the Claims-Made Policy in connection with the Jane Doe Lawsuit;

I.      Nationwide Mutual Insurance Company has no duty to defend NBCEE under the Nationwide CGL Policies in connection with the Jane Doe Lawsuit; and

J.      Nationwide Mutual Insurance Company has no duty to indemnify NBCEE under the Nationwide CGL Policies in connection with the Jane Doe Lawsuit; and

K.      Nationwide Mutual Insurance Company has no duty to defend NBCEE under the Nationwide Umbrella Policies in connection with the Jane Doe Lawsuit; and

L.      Nationwide Mutual Insurance Company has no duty to indemnify NBCEE under the Nationwide Umbrella Policies in connection with the Jane Doe Lawsuit; and

M.      Scottsdale Insurance Company has no duty to defend NBCEE under the CGL Special Event Policies in connection with the Jane Doe Lawsuit;

N.      Scottsdale Insurance Company has no duty to indemnify NBCEE under the CGL Special Event Policies in connection with the Jane Doe Lawsuit;

O.      Scottsdale Indemnity Company has no duty to defend NBCEE under the Claims-Made Policy in connection with the Jane Doe Lawsuit;

P.      Scottsdale Indemnity Company has no duty to indemnify NBCEE under the Claims-Made Policy in connection with the Jane Doe Lawsuit;

Q.      Nationwide Mutual Insurance Company has no duty to defend Rev. Waddles under the Nationwide CGL Policies in connection with the Jane Doe Lawsuit; and

R.      Nationwide Mutual Insurance Company has no duty to indemnify Rev. Waddles under the Nationwide CGL Policies in connection with the Jane Doe Lawsuit; and

S.      Nationwide Mutual Insurance Company has no duty to defend Rev. Waddles under the Nationwide Umbrella Policies in connection with the Jane Doe Lawsuit; and

T.      Nationwide Mutual Insurance Company has no duty to indemnify Rev. Waddles under the Nationwide Umbrella Policies in connection with the Jane Doe Lawsuit; and

U.      Scottsdale Insurance Company has no duty to defend Rev. Waddles under the CGL Special Event Policies in connection with the Jane Doe Lawsuit;

V.      Scottsdale Insurance Company has no duty to indemnify Rev. Waddles under the CGL Special Event Policies in connection with the Jane Doe Lawsuit;

W.      Scottsdale Indemnity Company has no duty to defend Rev. Waddles under the Claims-Made Policy in connection with the Jane Doe Lawsuit;

X.      Scottsdale Indemnity Company has no duty to indemnify Rev. Waddles under the Claims-Made Policy in connection with the Jane Doe Lawsuit;

Y.      Grant any other relief that this Court deems just and equitable under the circumstances, including the award of costs.

DATE: September 27, 2023                     Respectfully submitted,

                                             By: /s/ Jonathan L. Schwartz
                                             Attorney for Nationwide Mutual Insurance
                                             Company, individually and as successor-in-
                                             interest to Nationwide Mutual Fire Insurance
                                             Company, Scottsdale Insurance Company, and
                                             Scottsdale Indemnity Company

Jonathan L. Schwartz
Glenn A. Klinger
FREEMAN MATHIS & GARY LLP
33 N. Dearborn St., Suite 1430
Chicago, IL 60602

Tel: (773) 389-6440
jonathan.schwartz@fmglaw.com
glenn.klinger@fmglaw.com